```
            IN THE UNITED STATES DISTRICT COURT FOR
          THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                *
CLASSEN IMMUNOTHERAPIES,
INC.,                           *

      Plaintiff,                *
v.                                      CIVIL NO.: WDQ-04-2607
                                *
BIOGEN IDEC, et al.,
                                *
      Defendants.
*     *     *     *     *     *     *     *     *     *     *     *     *
```

MEMORANDUM OPINION

Classen Immunotherapies, Inc. ("Classen") has sued GlaxoSmithKline ("GSK") and Merck & Co., Inc. ("Merck"), for patent infringement. Merck has counterclaimed, alleging noninfringement and unenforceability of Classen's patents. Pending are: 1) Classen's motions for reconsideration of the Court's December 14, 2005, order and to dismiss Merck's counterclaims; 2) GSK's motion to amend its answer and for summary judgment; and 3) Merck's motions for summary judgment of its counterclaims and to strike Classen's jury demand. For the following reasons Classen's motion for reconsideration and to dismiss will be denied. GSK's motion to amend will also be denied. Merck's motion for summary judgment will be granted, and its motion to strike Classen's jury demand denied as moot.

I.   Background

Classen Immunotherapies, Inc. ("Classen") is a Maryland

corporation that has developed and patented methods for evaluating and improving the safety of immunization schedules. Classen is the holder of Patents 6,420,139 (the "139 patent"); 6,638,739 (the "739 patent"); 5,728,385 (the "385 patent"); and 5,723,283 (the "283 patent"). Am. Compl. at ¶ 2. Classen alleges that the defendants infringed the patents in question by: 1) examining the correlation between vaccination schedules and the risk of developing chronic immune mediated disorders; and 2) by using the results of that study to develop vaccination protocols. *Id* at ¶¶ 6-7.

In its July 22, 2005 order, this Court, *inter alia*, dismissed Counts I (infringement of the 139 patent), II (infringement of the 739 patent) and IV (infringement of the 283 patent) of the Amended Complaint as to GSK. On December 14, 2005, the Court dismissed Count III (infringement of the 385 patent) as to GSK and Merck and dismissed the counterclaims of invalidity and unenforceability of the 385 patent. The Court also granted summary judgment on Counts I, II, and IV as to Merck. Only Merck's counterclaims of invalidity and unenforceability of the 139, 739 and 283 patents remain.

II.  Classen's Motion for Reconsideration

Under Federal Rule of Civil Procedure 59(e), a court may grant a motion for reconsideration to: 1) accommodate an

intervening change in controlling law; 2) account for new evidence previously unavailable; or 3) correct a clear error of law or prevent manifest injustice. *Bogart v. Chapell,* 396 F.3d 548 (4th Cir. 2005).

A court may amend a final judgment under Rule 60(b) because of, *inter alia*: 1) mistake, inadvertence, surprise, or excusable neglect; 2) newly discovered evidence; 3) fraud, misrepresentation, or other misconduct of an adverse party; or 4) any other reason justifying relief from the operation of the judgment.  Federal Rule of Civil Procedure, 60(b).

Classen has moved for reconsideration of the Court's December 14, 2005, order arguing that the Court erred in finding no evidence of Merck's infringement of the Classen patents and that newly discovered evidence warrants reconsideration.

The only specific act of infringement alleged in Classen's Amended Complaint was Merck's participation in or facilitation of the 2001 study conducted by Dr. Frank DeStefano which studied the correlation between childhood vaccination and the development of diabetes.  As Merck offered uncontroverted evidence that it had no involvement in the DeStefano study, the Court granted Merck's motion for summary judgment.  The Court finds no clear error in this decision.

Classen also argues that newly discovered evidence proves Merck's infringement of the Classen patents.  Specifically,

Classen contends that Merck funded a study to determine whether hepatitis B vaccines increase the risk of multiple sclerosis and has participated in a number of vaccine safety and advisory organizations and advocated their findings.

Discovery in this case closed December 7, 2005. The Court did not grant Merck's motion for summary judgment until December 14, 2005. Even assuming that this evidence proves Merck infringed the Classen patents, Classen has not explained why this evidence was not previously offered. Accordingly, Classen's motion for reconsideration will be denied.

III. GSK's Motion to Amend its Answer

GSK has moved to amend its Answer pursuant to Rule 15(a) in order to assert counterclaims of noninfringement against Classen. GSK has further moved for summary judgment on the counterclaims arguing that GSK, like Merck, had no involvement in the DeStefano Study.

Under Rule 15(a) "a party may amend the party's pleadings only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Motions for leave to file an amended complaint are to be liberally granted in the absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

4

party, or futility.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Harless v. CSX Hotels,* 389 F.3d 444 (4th Cir. 2004); *Openshaw v. Cohen, Klingenstein & Marks*, 320 F.Supp.2d 357 (D.Md. 2004).

Classen filed its Amended Complaint in November 2004, alleging infringement of the 139 patent (Count I), the 739 patent (Count II), the 385 patent (Count III), and the 283 patent (Count IV).  On July 22, 2005, the Court dismissed Counts I, II, and IV of the Amended Complaint as to GSK.  GSK subsequently filed its answer to Count III and counterclaimed arguing noninfringement and patent invalidity of the 385 patent.  On December 7, 2005, discovery closed.  On December 14, 2005, the Court dismissed Count III of the Amended Complaint with prejudice and GSK's counterclaim without prejudice.

GSK's motion comes more than six months after the claims alleging infringement of the 139, 739 and 283 patent were dismissed and more than a month after the last claim against GSK was dismissed.  Given this delay, the fact that the Court has already determined that GSK did not infringe the 139, 739 and 283 patents, and the fact that Classen has not had an opportunity to conduct discovery of the claim, GSK's motion to amend its Answer will be denied.

IV.  Classen's Motion to Dismiss Merck's Counterclaims

Classen has moved to dismiss Merck's counterclaims for lack of standing and subject matter jurisdiction pursuant to Federal Rule of Procedure 12(b)(1) and 12(h)(3).  Classen argues that the Court's determination that Merck had not infringed the Classen patents moots Merck's counterclaims.

The Supreme Court has held, however, that a determination of noninfringement does not automatically moot a counterclaim for invalidity.  *Cardinal Chemical Co. v. Morton International,* 508 U.S. 83 (1993); *see also Fort James Corporation v. Solo Cup Co.,* 412 F.3d 1340 (Fed. Cir. 2005); *General Electric Co. v. Nintendo Co., Ltd.,* 179 F.3d 1350 (Fed. Cir. 1999).  "If...a party has actually been charged with infringement of the patent, there is, necessarily, a case or controversy adequate to support jurisdiction of a complaint or counterclaim."  *Cardinal,* 508 U.S. at 96.  Accordingly, Classen's motion to dismiss will be denied.

V.  Merck's Motion for Summary Judgment on its Counterclaims

Merck has moved for summary judgment arguing that Classen's patents are invalid because they are anticipated by prior art and are an attempt to patent an unpatentable mental process.

An issued patent is presumed valid and the burden is on the party challenging the validity of a patent to show that it is invalid by clear and convincing evidence.  *Minnesota Mining and*

6

*Manufacturing, Co.,* 303 F.3d 1294 (Fed. Cir. 2002).

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id* at 249.  Thus, "the judge must ask . . . whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, the opposing party must produce evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

A.  Anticipation

A patent claim is invalid by reason of anticipation if "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent..."  35 U.S.C. § 102(a).  Whether a patent claim has been anticipated is a question of fact.  *Minnesota Mining and Manufacturing, Co.,* 303 F.3d at 1301.

For prior art to anticipate because it has been "used," the use must be accessible to the public.  *Id.*  Public use includes any use of the claimed invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor.  *Id.*

Merck argues that the 139, 739 and 283 patents are invalid because they have been anticipated by prior art.  Specifically, Merck argues that the method for developing vaccine schedules claimed in the Classen patents and the vaccine schedule for Recombivax HB were already in use when the Classen patents were approved.

The 283 patent requires determining whether an immunization schedule affects the incidence of a chronic immune-mediated disorder by immunizing a treatment group and comparing the incidence of immune-mediated disorders to that of a control group.  283 Patent, Claim 1.  Both the 139 and 739 patents

8

require comparing the incidence of immune-mediated disorders in in treatment groups with different vaccination schedules and immunizing patients on a schedule identified as low risk. 139 Patent, Claim 1; 739 Patent, Claim 1.

As the Classen patents cover a process by which lower risk vaccine schedules are identified, the fact that the current Recombivax HB vaccination schedule was in use at the time the Classen patents were approved does not prove that the patented process was anticipated by prior art. In addition, Merck has offered no evidence that Classen's method for determining the safety of vaccine schedules was in use when the Classen patents were approved. Although a 1987 *Journal of the American Medical Association* article reports that "no significant adverse effects were reported that could be attributed to...the [Recombivax HB] vaccine," there is no evidence that the correlation between immune-mediated disorders and the vaccine was evaluated. Def.'s Motion for Summary Judgment, Ex. I, p. 4. As there remains a genuine issue as to whether the Classen's patents were anticipated by prior art, Merck's motion for summary judgment on the grounds of anticipation will be denied.

B. Unpatentability

Under 35 U.S.C. § 101, "whoever invents or discovers any new and useful process, machine, manufacture, or composition of

9

matter, or any new and useful improvement thereof, may obtain a patent therefore." Excluded from patent protection, however, are "laws of nature, natural phenomenon and abstract ideas." *Diamond v. Diehr,* 450 U.S. 175, 185 (1981); *see also Diamond v. Chakrabarty,* 447 U.S. 303, 309 (1980); *Parker v. Flook,* 437 U.S. 584 (1978); *Gottschalk v. Benson,* 409 U.S. 63 (1972).

> Einstein could not patent his celebrated law that $E=MC^2$; nor could Newton have patented the law of gravity. Such discoveries are manifestations of nature free to all men and reserved exclusively to none.

*Diehr,* 450 U.S. at 185 (citing *Chakrabarty,* 447 U.S. at 309). When a claim contains a natural phenomenon, the court must determine whether the claim is merely seeking to patent the phenomenon itself by describing it in abstract process terms. *Id* at 192.

In determining whether a claimed process is eligible for patent protection under § 101, courts must consider the patent claims as a whole. *Id* at 188. "A new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made." *Id.* However, "[i]nsignificant post-solution activity will not transform an unpatentable principle into a patentable process." *Id.*

Merck argues that the Classen patents are unpatentable because they involve "thinking about" whether a vaccination schedule reduces the incidence of chronic disease and, therefore,

10

seek to patent an abstract mental process about a natural phenomenon. Classen argues that the patents at issue do not claim a scientific truth, but instead describe a method for reducing the incidence of chronic immune mediated disorders.

Clearly, the correlation between vaccination schedules and the incidence of immune mediated disorders that Dr. Classen claims to have discovered is a natural phenomenon. The issue, therefore, is whether the Classen patents simply describe this correlation.

The 283 patent claims "a method of determining whether an immunization schedule affects the incidence or severity of a chronic immune-mediated disorder in a treatment group of mammals, relative to a control group of mammals."  283 Patent, Claim 1. The method described by the 283 patent involves: 1) immunization of a treatment group; and 2) a comparison of the incidence of chronic immune mediated disorders in the treatment group relative to a control group. *Id*.

Although articulated as a process, the 283 patent does not claim a specific technique or technical process of testing vaccine safety. Instead, the 283 patent describes only a general inquiry of whether the proposed correlation between an immunization schedule and the incidence of chronic disorders exists. As such, the process is indistinguishable from the idea itself. Accordingly, the 283 patent seeks to patent an

11

unpatentable natural phenomenon.

Both the 139 and 739 patents claim "a method of immunizing a mammalian subject" which requires: 1) comparing the incidence of immune mediated disorders in treatment groups with different vaccination schedules; and 2) immunizing patients on a schedule identified as low risk.  139 Patent, Claim 1; 739 Patent, Claim 1.

Although described as a process for immunizing "mammalian subjects", the 139 and 739 patents do not describe a particular vaccine or vaccine schedule.  Instead, the 139 and 739 patents describe a process by which different immunization schedules are compared and the schedule which has the lowest correlation to chronic disorders is selected.  Like the 283 patent, the 139 and 739 patents describe little more than an inquiry of the extent of the proposed correlation between vaccines and chronic disorders. Although the 139 and 739 patents include the active step of immunizing patients in accordance with a schedule determined to be low risk, as noted above, "[i]nsignificant post-solution activity will not transform an unpatentable principle into a patentable process."  *Diehr,* 450 U.S. at 192.  As it would appear that the 139 and 739 patents are an indirect attempt to patent the idea that there is a relationship between vaccine schedules and chronic immune mediated disorders, the Court finds they are an attempt to patent an unpatentable natural phenomenon.

C.  Conclusion

As the Court finds that the 283, 139 and 739 patents seek to patent unpatentable subject matter, Merck's motion for summary judgment on its counterclaim for invalidity will be granted.

VI.  Merck's Motion to Strike Classen's Jury Demand

Merck has moved to strike Classen's jury demand.  As the Court will grant summary judgment of Merck's counterclaim, the motion will be denied as moot.

VII.  Conclusion

For the reasons stated above, Classen's motion for reconsideration and to dismiss will be denied.  GSK's motion to amend will also be denied.  Merck's motion for summary judgment will be granted, and its motion to strike Classen's jury demand denied as moot.

<u>August 16, 2006</u>                     <u>        /s/        </u>
Date                                      William D. Quarles, Jr.
                                           United States District Judge