IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

CLASSEN IMMUNOTHERAPIES, INC.       *

     Plaintiff,                              *

        v.                                 *     CIVIL NO.: WDQ-04-2607

BIOGEN IDEC *et al.*                      *

     Defendants.                             *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

MEMORANDUM OPINION

Classen Immunotherapies, Inc. ("Classen") sued Biogen Idec ("Biogen") and GalaxoSmithKline ("GSK") for patent infringement. Pending are Classen's counsel's motion to withdraw and Biogen's motion for an exceptional case finding.  ECF Nos. 277, 284. Biogen also seeks, unopposed, dismissal of Classen's claims against it and its counterclaims.[1]  ECF No. 277.  No hearing is necessary.  Local Rule 105.6 (D. Md. 2012).  For the following reasons, Biogen's motion will be granted, and the Court will defer its ruling on the motion to withdraw.

---

[1] In accordance with the parties' agreement, the Court will dismiss Classen's claims against Biogen with prejudice under Federal Rule of Civil Procedure 41(b), and Biogen's counterclaims against Classen without prejudice.  *See* ECF Nos. 278 at 1, 283 at 2.

I. Background[2]

Classen owns three patents[3] for methods for choosing immunization schedules for infants.  *See* ECF No. 202 ¶¶ 23-31. Each patent protects a method of choosing an immunization schedule for infants which minimizes the likelihood of developing chronic immune-mediated disorders[4] or common infectious diseases.  *Id*.  Though the methods vary among the patents in suit, each involves comparing or screening immunization schedules, determining which schedule minimizes the likelihood of acquiring at least one disease or disorder, and immunizing patients according to that schedule ("the patented methods").  *Id*. ¶¶ 23, 26, 29; ECF No. 278 at 2.  Classen obtained the first of the patents in suit in July 2002.  ECF No. 176-5 at 2.

---

[2] In reviewing a motion for an exceptional case finding, the Court "must determine, in light of the entire case, whether [the] claims and assertions were so lacking in merit that the action as a whole was 'exceptional.'"  *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 551 (4th Cir. 2004).

[3] Patents number 6,420,139 ("the '139 patent"), 6,638,739 ("the '739 patent"), and 7,008,790 ("the '790 patent") (collectively, "the patents in suit").

[4] Chronic immune-mediated disorders are auto-immune diseases, such as diabetes and multiple sclerosis ("MS").  *See* ECF No. 61-1 at 5, 278 at 10.

On August 10, 2004, Classen sued Biogen, GSK, Merck & Co., Inc. ("Merck"), and others,[5] alleging that they manufacture, license, market, and sell hepatitis B vaccines.  ECF No. 1 ¶ 6. Classen claimed that the defendants' studies and informational pamphlets related to the administration of these vaccines infringed the '139 and '739 patents.  *See Id*. ¶¶ 6-7, 34-35.  On November 3, 2004, Classen amended its complaint.[6]  ECF No. 4.

On January 26, 2005, Biogen's counsel, by letter, informed Classen's counsel that Biogen "was wrongly named in [Classen's] complaint."  ECF No. 277-4 at 2.  Biogen told Classen that it licensed its hepatitis B vaccines to GSK in the late 1980s but-- other than receiving royalty payments--had no subsequent involvement with GSK's vaccines.[7]  *Id*.

On July 22, 2005, the Court dismissed three counts of the amended complaint asserted against GSK and Biogen.  ECF No. 77. The Court held that GSK's and Biogen's allegedly infringing actions fell within the § 271(e)(1)[8] safe harbor.[9]  *Classen*, 381

---

[5] Biogen and GSK are the only remaining defendants.

[6] The amendments added new defendants that were subsequently dismissed from the suit.  *See* ECF No. 4 at 3; *Classen Immunotherapies, Inc*. *v. Biogen IDEC*, 381 F. Supp. 2d 452, 457 (D. Md. 2005).

[7] Biogen's counsel offered to provide Classen with a declaration that Biogen had no involvement with GSK's vaccines beyond receiving royalties.  ECF No. 277-4 at 2.

[8] The statutory safe harbor provides:

F. Supp. 2d at 456.  On August 16, 2006, the Court granted summary judgment to Merck on its invalidity counterclaim, finding that the '139 and '739 patents were "an attempt to patent an unpatentable natural phenomenon." *Classen Immunotherapies, Inc. v. Biogen Idec*, CIVIL WDQ-04-2607, 2006 WL 6161856, at *5 (D. Md. Aug. 16, 2006).

Classen appealed, and on August 31, 2011, the Federal Circuit reversed, holding that the '139 and '739 patents are eligible for patent protection and that Biogen and GSK were not entitled to § 271(e)(1) safe harbor. *Classen Immunotherapies, Inc. v. Biogen Idec,* 659 F.3d 1057, 1066, 1072 (Fed. Cir. 2011), *cert. denied* No. 11-1078, 2013 WL 141405 (Jan. 14, 2013).

On January 26, 2012, the Court reopened the case.  ECF No. 170.  On February 3, 2012, Classen filed a second amended complaint against GSK and Biogen, adding infringement of the

---

It shall not be an act of infringement to make, use, offer to sell, or sell within the United States or import into the United States a patented invention . . . solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products.

35 U.S.C. § 271(e)(1).

[9] On December 14, 2005, the Court granted Classen's motion to dismiss the remaining count with prejudice.  ECF No. 128.

'790 patent.[10]   ECF No. 172 at 13.   The complaint also asserted
that Biogen induced infringement of Classen's patents through
"promotion of the website MSActive . . . which has
acknowledge[d] risk between hepatitis B immunization and [MS
through] press release[s] describing a paper . . . by Paul A.
Offit and Charles J. Hackett" addressing whether vaccines cause
allergic or autoimmune diseases, and "a paper by M. Hernan that
compared the risk of several different hepatitis B immunization
schedules . . . on the development of [MS]."  *Id.* at 8-9.
Discovery began soon after.  ECF No. 174.

On June 20, 2012, Classen filed a third amended complaint
against GSK and Biogen.  ECF No. 202.  On July 5, 2012, Biogen
answered the complaint and asserted counterclaims for a
declaratory judgment of patent non-infringement and invalidity.
ECF No. 207 at 12.

On September 12 and 13, 2012, GSK filed requests for *inter
partes* reexamination of the patents in suit at the Patent and
Trademark Office ("PTO").  ECF Nos. 234-4 at 6, 234-6 at 5, 234-
8 at 5.  On October 24, November 19, and November 23, the PTO
granted the reexamination requests and issued First Office
Actions rejecting all the asserted claims.[11]  *See* ECF Nos. 234-4

---

[10] The '790 patent was issued on March 7, 2006.

[11] GSK did not seek review of every claim in the three patents.

to 234-9.  On December 5, 2012, GSK moved for a stay pending
reexamination, which Classen opposed.  ECF Nos. 234, 235.  On
February 22, 2013, the Court denied the motion to stay.  ECF No.
237.  On June 7, 2013, the Court held a claim construction
hearing.[12]  ECF No. 250.

On September 13, 2013, Classen served amended infringement
contentions.  *See* ECF No. 277-2 at 1.  The contentions asserted
that Biogen induced infringement of Classen's patents in
connection with its "publication [and] general distribution" of
the papers referenced in the press releases on the MSActive
website.  *See, e.g.*, ECF Nos. 277-5 at 2, 277-6 at 2, 277-7 at
18-19.  On October 4, 2013, GSK moved to strike the infringement
contentions.  ECF No. 268.

On October 21, 2013, Biogen served sworn interrogatories
reiterating that its only involvement with GSK's vaccines was
licensing them to GSK in 1988 and collecting royalty payments.
ECF No. 277-9 at 3.  The same day, Classen opposed GSK's motion
to strike.  ECF No. 270.  In its opposition, Classen stated that
"[a]ll claims against Biogen have now been dismissed by
Plaintiff . . . in order to simplify and streamline this case
for purposes of discovery and trial."  *See* ECF No. 270 at 3 n.1,
9.  Classen did not, however, move to dismiss Biogen, and the

---

[12] On August 27, 2013, by written opinion, the Court ruled on the
construction of the disputed patent claims.  ECF No. 260.

parties were unable to agree on a joint motion for dismissal. *See* ECF No. 283 at 2.

On November 8, 2013, Biogen moved to dismiss the claims against it with prejudice under Rule 41(b), to dismiss its counterclaims without prejudice, and for an exceptional case finding. ECF No. 277. On November 13, 2013, the parties jointly moved for a stay pending reexamination.[13] ECF No. 280. On November 21, 2013, Classen opposed Biogen's motion only as to the exceptional case finding. ECF No. 283. On November 21, 2013, Classen's counsel, Joseph J. Zito, Esquire, moved to withdraw. ECF No. 284. On December 9, 2013, Biogen replied to Classen's opposition to its motion. ECF No. 286. On December 15, 2013, Classen opposed its counsel's motion to withdraw. ECF No. 287.

II. Analysis

A. Exceptional Case Finding

1. Exceptional Case

Biogen argues that this case is "exceptional" because "[f]or over nine years, Classen has maintained its claim that Biogen Idec infringed its patents without any good faith basis whatsoever." ECF No. 278 at 8. Classen argues that Biogen is

---

[13] The Court has granted the motion but will not administratively close the case until it has "rule[d] on Biogen Idec's pending Motion to Dismiss and any connected application for fees and costs," as the parties have requested. ECF No. 280 at 1.

not a prevailing party and that its infringement claims "are . . . supported in fact and law and remain uncontroverted."  ECF No. 283 at 6.

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  A "prevailing party" is one who "obtained an enforceable judgment on the merits or a court-ordered consent decree that materially altered the legal relationship between the parties, or the equivalent of either of those."  *Samsung Electronics Co., Ltd. v. Rambus, Inc.*, 440 F. Supp. 2d 495, 500-02 (E.D. Va. 2006) (party that obtained a Rule 41(a)(2) dismissal of claims against it was "prevailing party" for purposes of an exceptional case determination) (*quoting Rice Services, Ltd. v. United States*, 405 F.3d 1017, 1025 (Fed. Cir. 2005) (internal quotation marks omitted)); *accord Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010) (prevailing party in context of Rule 54(d)(1) award of costs).

An "exceptional" case--determined on a case-by-case basis-- is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  A case may be considered exceptional when a

8

party engages in unreasonable litigation or other conduct, even
if that conduct is not "independently sanctionable" under the
Federal Rules of Civil Procedure.  *See id*. at 1757.  If there is
no misconduct, the Court may impose sanctions against a patent
plaintiff under § 285 when "the litigation is objectively
baseless" or "the plaintiff brought [the case] in subjective bad
faith."[14]  *Id*.  The movant must establish an exceptional case by
a preponderance of the evidence.[15]  *Id*. at 1758.

There is a presumption that a plaintiff has asserted
infringement of a duly granted patent in good faith.  *Taurus IP,
LLC v. DaimlerChrysler Corp*., 726 F.3d 1306, 1326-27 (Fed. Cir.
2013).  An infringement claim is not "objectively baseless"
merely because the patent plaintiff is unsuccessful on the
merits.  *See Wi-Lan Inc. v. LG Electronics, Inc*., 10 CIV. 0432
LAK AJP, 2013 WL 2322483, at *5 (S.D.N.Y. May 10, 2013); *e.g.*,

---

[14] In *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc*., 393
F.3d 1378, 1381 (Fed. Cir. 2005), the Federal Circuit held that
"[a]bsent misconduct in conduct of the litigation or in securing
the patent, sanctions may be imposed against the patentee only
if both (1) the litigation is brought in subjective bad faith,
*and* (2) the litigation is objectively baseless."  (emphasis
added).  The recently decided *Octane Fitness* rejected that
standard, finding it "overly rigid."  134 S. Ct. at 1756.  The
Supreme Court held that "a case presenting *either* subjective bad
faith *or* exceptionally meritless claims may sufficiently set
itself apart from mine-run cases to warrant a fee award."  *Id*.
at 1757 (emphasis added).

[15] Previously, the Federal Circuit held that an exceptional case
must be established by clear and convincing evidence, but the
Supreme Court in *Octane Fitness* rejected this heightened burden
of proof.  *See* 2014 WL 1672251, at *7.

*ILOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed. Cir. 2011) (reversing exceptional case finding against patent plaintiff that lost on the merits).  Instead, "objectively baseless" claims are "such that no reasonable litigant could reasonably expect success on the merits."  *Taurus*, 726 F.3d at 1327 (*quoting Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008) (internal quotations omitted)). A party has an obligation not to assert baseless infringement claims "and must continually assess the soundness of pending infringement claims" during the litigation.  *See id.* at 1328.

Following the Court's dismissal with prejudice of Classen's claims against it, *see supra* note 1, Biogen will be the "prevailing party" under § 285, because it has obtained--in its favor--a judicially sanctioned material alteration of its relationship with Classen.  *See, e.g., Highway Equip. Co., Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006) ("The dismissal of a claim with prejudice is a judgment on the merits under the law of the Federal Circuit." (internal quotations and punctuation omitted)); *IA Labs CA, LLC v. Nintendo Co., Ltd.*, CIV. PJM 10-833, 2012 WL 1565296, at *2 (D. Md. May 1, 2012) *aff'd*, 515 F. App'x 892 (Fed. Cir. 2013) (defendant was prevailing party because Court "dismissed all claims relating to the '226 patent from the suit, following IA Labs' disclaimer of the patent (which rendered it unenforceable)").  Classen's

10

consent to the Court's dismissal of its claims does not change the analysis.[16]  *See, e.g., Highway Equip.*, 469 F.3d at 1035; *Samsung*, 440 F. Supp. 2d at 502.  Accordingly, if this case is exceptional, Biogen is eligible for a fee award as a prevailing party under § 285.

Classen argues that this case is not exceptional, because its claims against Biogen were not objectively baseless.  *See* ECF No. 283 at 4.  It states that "Biogen was named as a defendant in this case because it developed and licensed the manufacture and sale of three vaccines in suit."  *Id*.  It also notes that Biogen "sponsors a website for patients with [MS] that discusses the potential relationship between vaccination and autoimmune disorders," and includes "hyperlinks to articles discussing publications directed to research in [this] area."  *Id*.

---

[16] Classen argues that Biogen cannot be a "prevailing party" because it "has not prevailed on a single substantive motion in the case."  ECF No. 283 at 3.  However, as Biogen has obtained final judgment in its favor through dismissal of Classen's claims with prejudice, its previous lack of success--or Classen's previous success--on appeal or in some motions is not relevant to its prevailing party status.  *Cf. Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603, 121 S. Ct. 1835, 1839, 149 L. Ed. 2d 855 (2001) (noting that Black's law dictionary defines "'prevailing party' as a party in whose favor a judgment is rendered.") (internal quotations omitted); *Shum*, 629 F.3d at 1367 (when statute refers to "the" prevailing party, "there can only be one prevailing party"); *Tech. Innovations, LLC v. Amazon.com, Inc.*, CV 11-690-SLR, 2013 WL 4409462, at *3 (D. Del. Aug. 15, 2013) ("[T]he prevailing party cannot be determined until the patent case is resolved in its entirety.").

As early as January 26, 2005--when Biogen's counsel wrote
to Classen's counsel--Classen knew that Biogen did not develop,
manufacture, or sell the allegedly infringing vaccines. *See* ECF
No. 277-4 at 2. At that time Biogen offered to provide Classen
with a declaration to confirm that it had no involvement with
GSK's vaccines except to collect royalties. *Id.* Although
Biogen licensed the vaccines to GSK in 1988, this occurred many
years before Classen obtained or applied for the patents in
suit. *See id.*; ECF Nos. 176-5 at 2, 176-6 at 2, 176-7 at 2.
Accordingly, this action cannot support an infringement claim.
*See Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1196
(Fed. Cir. 1996) ("[W]hen no patent has issued at the time of
the inducement there [cannot] be a violation of § 271(b). . . .
[I]f the thing that was abetted was not illegal at the time of
abetment, but depended on some future event that might not occur
(such as issuance of the patent) liability [cannot] be
retroactively imposed."); *Welker Bearing Co. v. PHD, Inc.*, 550
F.3d 1090, 1095, 1099 (Fed. Cir. 2008). The later-filed
infringement contentions--which assert that Biogen induced
infringement only by disseminating research and information--and
Biogen's sworn interrogatory responses--which disclaim any
involvement in GSK's vaccines' manufacture or sale--also confirm
that this infringement claim is objectively baseless. *See,*
*e.g.*, ECF Nos. 277-5 at 2, 277-9. Classen has offered no

12

evidence to refute Biogen's showing that--within five months of filing suit--no reasonable litigant could reasonably expect success on the merits of an infringement claim based on Biogen's alleged actions in developing, licensing, manufacturing, or selling GSK's vaccines.

Classen also claims that Biogen induced infringement by its sponsorship of MSActive, which provided links to two articles discussing the relationship between vaccinations and autoimmune disorders. *See* ECF No. 283 at 4-5.  Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  To be liable under § 271(b), the patent holder must show that there has been direct infringement, and that the defendants "actively and *knowingly* aid[ed] and abett[ed] [the] direct infringement," with the "specific intent . . . to induce infringement." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (emphasis in original); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005).  For method patent claims, "infringement occurs when a party performs all of the steps of the process." *W.L. Gore & Associates, Inc. v. Medtronic, Inc.*, 874 F. Supp. 2d 526, 570 (E.D. Va. 2012) *aff'd*, 530 F. App'x 939 (Fed. Cir. 2013).  To show induced infringement of method claims, "it is not necessary to prove that all the steps were committed by a single entity." *Akamai Technologies,*

13

*Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1306 (Fed. Cir. 2012).

Biogen attached a copy of the articles in question to its motion. ECF Nos. 277-7, 277-8. The articles discuss the results of research studies--the Offit study, the DeStefano study, and the Hernan study--that Classen asserts infringed its patents. *See* ECF Nos. 277-5 at 3, 283 at 4-5. However, the article discussing the Offit study only states that the study concluded that there is *no link* between vaccinations and contracting MS. *See* ECF No. 277-8 at 2. Thus, this article suggests that there is no need for medical professionals to perform the steps of Classen's patents, which involve the administration of vaccines according to schedules that are *less likely* to lead to autoimmune disorders. *See* ECF No. 277-3 (Classen exhibit from claim construction describing steps of patents). Accordingly, there is no basis for Classen's claim that this article actively induces others to directly infringe Classen's patents.

The second article discusses the conflicting results of the Hernan study and the DeStefano study. The article notes that the Hernan study "found a threefold increase in the likelihood of a person developing MS if she or he had a hepatitis B vaccination within the prior three years." ECF No. 277-8 at 6. Although the Hernan study was "at odds with the findings of most

14

earlier studies," and "there is no reason to refuse" a hepatitis B vaccination, the article notes that the study "revives concern about a possible link between MS and hepatitis B vaccination." *Id.* at 6-7. The DeStefano study, however, "did not find any increased risk of MS for any time interval following hepatitis B vaccination." *Id.* Although this article discusses a potential link between vaccination and an autoimmune disorder, it does not mention or allude to the possibility that vaccinating a person according to a particular schedule might affect the risk of contracting MS. Instead, it suggests that a study showed that those vaccinated *within the last three years of when the study was conducted* had an increased risk of MS. Accordingly, there is no basis for Classen's claim that this article might induce someone to perform the steps of its patents. Classen points to no other information on the MSActive website that would induce others to infringe its patents.[17]

---

[17] In opposing Biogen's motion, Classen also did not provide any evidence of direct infringement resulting from the posting of these articles or explain why the articles might induce a potential infringer to vaccinate in accordance with a particular vaccination schedule. Classen states that its expert reports and depositions and interrogatories identify direct infringers, but it has not included any of this evidence in its opposition. *See* ECF No. 283 at 8. Classen also states that "Dr. Classen and Dr. Holohan have concluded that these studies can, and do induce infringing activities," but again fails to include this evidence in its opposition. *See id.* This statement is also undermined by an excerpt from Dr. Holohan's deposition--attached to Biogen's reply--in which he states that he cannot offer an opinion on whether GSK infringed the patents in suit, because he

Because Classen's infringement claims against Biogen were objectively baseless, this case is exceptional under § 285. *See Octane Fitness*, 2014 WL 1672251, at *7.

### 2. Fee Award

If the Court finds a case "exceptional," it has discretion whether to award attorneys' fees. *Superior Fireplace Co. v. Majestic Products Co.*, 270 F.3d 1358, 1378 (Fed. Cir. 2001). To determine if fees are appropriate, the Court weighs "intangible [and] tangible factors," including "the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice." *Id.*

Here, Biogen defended against objectively baseless infringement claims for about nine years before Classen expressed willingness to dismiss Biogen from the suit. Hundreds of thousands of dollars in legal fees have been expended in the process. ECF No. 278 at 1. "[G]iven the extent of the effort required to defend against the objectively baseless claim[s]" asserted by Classen, an award of fees is appropriate. *Nintendo*, 2012 WL 1565296, at *3-*4 (awarding legal fees when patent plaintiff waited six months to dismiss an objectively baseless suit). Biogen has offered unrefuted evidence that Classen knew

---

is "not an expert in patent law or patent infringement so [he] would not offer an opinion on that." ECF No. 286-4 at 4.

from January 26, 2005 that its claims were objectively

baseless.[18]   ECF No. 277-4 at 2.   Accordingly, Biogen is entitled

to an award of reasonable attorneys' fees and expenses incurred

after that date.   *See Microstrategy Inc. v. Crystal Decisions,*

*Inc.*, 555 F. Supp. 2d 475, 482 (D. Del. 2008).

B. Motion to Withdraw

Classen's counsel, Zito, has moved to withdraw from his

representation of Classen "due to a lack of resources to

continue representation in this matter."   ECF No. 284 at 1.

Classen requests that the Court defer ruling on the motion,

because Zito has already agreed to represent Classen for the

reexamination, and Classen needs time to determine if it will

secure alternative counsel.   ECF No. 287 at 1.

The Court has wide discretion in ruling on a motion to

withdraw.   *See Patterson v. Gemini Org., Ltd.*, No. 99–1537, 2000

WL 1718542, at *2 (4th Cir. Nov. 17, 2000).   Under Local Rule

101.2(b) (D. Md. 2012), counsel for an entity--like Classen--may

withdraw with the Court's permission if:

---

[18] In its response, Classen implies that the results of the claim
construction prompted it to dismiss claims against Biogen.   ECF
No. 283 at 9.   However, Classen has not identified how the claim
construction affected--or could have affected--the viability of
its claims.   Moreover, Classen has stated that it is dismissing
Biogen to streamline the case and save money, *see* ECF Nos. 270
at 9, 283 at 1, and continues to maintain that its claims
against Biogen are "fully supported in law and fact," ECF No.
283 at 1.

17

(1) appearance of other counsel has been entered, or
(2) withdrawing counsel files a certificate stating
(a) the name and last known address of the client, and
(b) that the written notice has been mailed to or
otherwise served upon the client at least seven (7)
days previously advising the client of counsel's
proposed withdrawal and notifying it that it must have
new counsel enter an appearance or be subject to the
dismissal of its claims and/or default judgment on
claims against it. In the event that within thirty
(30) days of the filing of the motion to withdraw, new
counsel has not entered an appearance, the Court may
take such action . . . it deems appropriate . . . .

In the motion, Zito has certified his compliance with Local

Rule 101.2(b). ECF No. 284 at 2. New counsel has not entered

an appearance for Classen since the filing of the motion.

However, Classen states that "Counsel has already agreed to

defend Biogen's counter charges," and Zito filed Classen's

opposition to Biogen's motion for an exceptional case finding

before moving to withdraw. *See* ECF Nos. 283, 287 at 1.

Biogen's motion will not be fully resolved until after the Court

determines an appropriate award of attorneys' fees and costs.

Accordingly, the Court will not rule on Zito's motion until

final resolution of Biogen's motion, unless Zito informs the

Court in writing that he will not represent Classen in filing

any opposition to Biogen's motion for fees.

III. Conclusion

For the reasons stated above, Biogen's motion to dismiss and for an exceptional case finding will be granted.

5/14/14
_____
Date

_____
William D. Quarles, Jr.
United States District Judge